UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

THOMAS ERIC McGREW,                    )
                                       )
        Plaintiff,                     )        Civil Action No. 13-CV-30-HRW
                                       )
V.                                     )
                                       )
BOYD COUNTY, ET AL.,                   )        **MEMORANDUM OPINION**
                                       )           **AND ORDER**
        Defendants.                    )

                    ****   ****   ****   ****

Thomas Eric McGrew is an inmate confined in the Kentucky State Penitentiary located in Eddyville, Kentucky.  Proceeding without an attorney, McGrew has filed a 42 U.S.C. § 1983 civil rights complaint challenging conditions of his confinement in the Boyd County Detention Center ("BCDC") in Catlettsburg, Kentucky.[1]  [D. E. No. 1]  McGrew alleges that between December 7-10, 2012, and on January 17, 2013, three BCDC officials violated his various constitutional rights.  [D. E. No. 1]  By prior Order [D. E. No. 4], the Court has granted McGrew's motion to proceed *in forma pauperis*.

---

[1]

The named defendants are: (1) Boyd County, Kentucky; (2) Joe Burchett, Jailer, BCDC; (3) "Officer Fannin," BCDC; and (4) "Officer Contradas," BCDC.

The Court must conduct a preliminary review of McGrew's complaint because he has been granted pauper status and because he asserts claims against government officials.  28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

The Court evaluates McGrew's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this stage, the Court accepts McGrew's factual allegations as true, and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Having reviewed McGrew's complaint, however, the Court must dismiss it with prejudice because he fails to state a claim upon which relief can be granted.

## ALLEGATIONS OF THE COMPLAINT

The following is a summary of the factual allegations set forth in McGrew's complaint and ten-age supplement thereto.  While confined in the BCDB, McGrew sent letters to the Kentucky Department of Corrections ("KDOC") complaining about numerous alleged adverse conditions at the BCDC.  [D. E. No. 1, p.1]  On

2

December 7, 2012, BCDC Jailer Joe Burchett began questioning McGrew at length about phone calls he had received from the KDOC, the specifics of McGrew's letters and omplaints to the KDOC, and McGrew's recent commissary purchases. [*Id*., p. 2]  Soon thereafter, Correctional Officer Fannin handcuffed McGrew to a chair and informed him that he had received a tip that McGrew had a razor on his person.  [*Id*., p. 2]  McGrew disputed the razor allegation, but Fannin and another inmate trustee began going through McGrew's personal belongings, discovered documents relating to another federal civil lawsuit which McGrew had filed,[2] and questioned McGrew about that other lawsuit.  [*Id*.; continued at D. E. No. 1-1, p.1]

After McGrew answered the questions, Fannin pulled a cigarette lighter wrapped in toilet paper out of McGrew's possessions.  [D. E. No. 1-1, p.1]  McGrew disclaimed ownership of and any knowledge about the cigarette lighter, but Fannin told McGrew that possessing a cigarette lighter was felony and that McGrew would be put in the "D Block, isolation cell."  [*Id*.]  McGrew contends that Burchett "...had the lighter planted so he could isolate me."  [*Id*., p. 2]

McGrew stated that at that point, "Joe [Burchett] asked me why the DOC [KDOC] had reason to believe my life was in danger."  [*Id*.]  McGrew responded

---

[2] The lawsuit to which McGrew referred is *McGrew v. Boyd County Detention Center, et al*, No. 0:12-CV-010-HRW-EBA (E.D. Ky. 2012).  That action is currently pending.

that it was because of incidents such as the planting of the cigarette lighter, the poisoning of his (McGrew's) food, and other examples of wrongdoing by the BCDC guards. [*Id.*] McGrew claims that Burchett placed him into a cell with Inmate Chris Woodle assuming that Woodle and McGrew would get into a fight and that Woodle would hurt him, but that when McGrew and Woodle did not get into a fight, Burchett had Woodle moved to another cell. [*Id.*, pp. 2-3]

Fannin then handed McGrew a citation charging him possessing "Dangerous Contraband,"[3] and placed him in the suicide cell located in the booking area of the BCDB, stating that he was doing so for McGrew's safety. [*Id.*, p. 4] That night, when a jail officer let McGrew use the phone, McGrew called Officer Francis of

---

[3]

Dangerous contraband is "contraband which is capable of use to endanger the safety or security of a detention facility or persons therein." KRS 520.010(3). The KDOC's applicable administrative regulation, CPP 9.6(II)(A)(1), further provides that dangerous contraband is "[a]ny gun, firearm, weapon, sharp instrument, knife, unauthorized tool, or **any other object** which may be used to do bodily harm or facilitate escape." (Emphasis added.) The Kentucky Court of Appeals has recently determined that an inmate who possesses a cigarette lighter in a jail or detention facility possesses "dangerous contraband." *Zitter v. Bottoms*, **CASE NUMBER** 2013 WL 4710328, at *2 (Ky. App. Aug. 30, 2013) ("It is not unreasonable to construe a lighter as dangerous in a prison environment where fires can be devastating. They can create opportunities both for escape and for risk of bodily harm to inmates, staff, and emergency responders. Furthermore, lighters may be used to smoke certain drugs that are specifically enumerated as dangerous contraband. Under these circumstances, we cannot conclude that it was erroneous for Zitter to be charged with possession of dangerous contraband.")

the Catlettsburg Police Department. [*Id.*] Officer Francis then visited McGrew and told him not to worry because he was investigating the BCDB. [*Id.*, p. 5]

The next morning, McGrew refused to eat the breakfast Fannin had served him, and Fannin threatened to place him on suicide watch. [*Id.*] Fannin then read McGrew's journal entries, ordered another officer to take McGrew's "suicide thin" mat, but after McGrew had a panic attack, ordered the official to return the mat to McGrew. [*Id.*] McGrew was then placed in a suicide cell. [*Id.*, pp. 5-6]

McGrew claims that while he was confined in the suicide cell, unidentified BCDC officials applied excessive force to Inmate Jose Sabino, who was confined in a suicide cell next to him, and that he made notes about the excessive force being applied to Sabino. [*Id.*, p. 6] The next day, Officer Francis came to the BCBC and McGrew gave him his notes about Sabino's alleged mis-treatment. [*Id.*] The exact time sequence is unclear, but Officer Francis thereafter arranged for McGrew and Sabino to be transferred to the Greenup County Jail. [*Id.*]

It appears from the complaint that McGrew remained confined in the Greenup County Jail until January 17, 2013. McGrew's allegations concerning the events on that date are somewhat unclear, but it appears that after making court appearances in the Boyd County Courthouse, the Boyd County Sheriff's

5

Department transported both McGrew and Sabino to the BCDC instead of the Greenup County Jail. [*Id.*, pp. 7-8] McGrew states that after he informed BCDC personnel that he was a witness against the BCDC, and that he and Sabino should not have been taken to the BCDC, the sheriff "came and got us." [*Id.*, p. 8] McGrew sent written complaints about these events to the KDOC, but as of February 4, 2013, the KDOC had not responded to his letters. [*Id.*].

McGrew alleges that the foregoing actions amounted to violations of his constitutional right to due process of law, cruel and unusual punishment, invasion of his right to privacy, and intimidation. [D. E. No. 1, p. 4] McGrew seeks $3 million to compensate him for his pain and suffering, and administrative changes to "prevent future occurances to others [sic] inmates." [*Id.*, p. 8]

## DISCUSSION

### 1. Alleged Violation of Due Process of Law and Cruel and Unusual Punishment

McGrew's first claim is that being issued the "Dangerous Contraband" citation and/or being placed in areas of the BCDC identified as "suicide cells" for approximately two to three days violated his right to due process of law, presumably in violation of the Fourteenth Amendment of the United States

Constitution. However, McGrew has not identified what process he was entitled to receive in connection with either of these alleged events.

An inmate facing disciplinary action which could result in the loss of his good-time credits is entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Those protections consist of: (1) sufficient notice of a hearing; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.*, at 563–69.

Here, McGrew does not allege facts indicating that he was entitled to *Wolff*'s various procedural protections. McGrew did not allege that the alleged disciplinary action against him progressed any further than the issuance of the citation, *i.e.*, he did not state that a disciplinary hearing on the charge ever transpired; that he was actually convicted of the contraband charge; or that he suffered the loss of any good-time credits as a result of the charge, which in turn would have lengthened the term of his prison term.[4]  McGrew also did not allege that the alleged discovery of the cigarette lighter resulted in the filing of criminal

---

4

McGrew did not allege that the issuance of the "Dangerous Contraband" citation subjected him to any adverse consequences--immediate or long term--in relation to his institutional record. Within days of the alleged issuance of the citation, McGrew was transferred to another county jail.

7

charges in the state courts of Kentucky under Ky. Rev. Stat. § 520.010.  Absent allegations demonstrating that the BCDC actually pursued a disciplinary charges against McGrew, the Court can not conclude that he was denied any procedural due process to which he may have been entitled.

McGrew further appears to allege that his due process rights were violated because Defendants Burchett and/or Fannin placed him on suicide watch for approximately two to three days without proper justification.  As McGrew specifically invoked the term "cruel and unusual punishment" in his complaint, D.E. No. 1, p. 4, he also appears to allege that this action violated his Eighth Amendment right to remain free from cruel and unusual punishment.

A prisoner's right to due process of law is violated where he suffers restraint which imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (6th Cir. 1995) (citing *Sandin v. Conner*, 515 U.S. 472, 483(1995)). McGrew alleges that BCDC guards applied excessive force to Inmate Sabino during Sabino's confinement in a suicide cell, but McGrew has not alleged that *his own* brief stay in a suicide cell imposed an atypical or significant hardship in relation to other aspects of incarceration, nor has he alleged facts from which this inference could

8

be reasonably drawn. McGrew also did not allege that being placed on suicide watch for two to three days adversely affected the length of his sentence. In fact, McGrew alleged facts which indicate that his brief confinement on the suicide watch was warranted, *i.e.*, he alleged that he refused to eat the food tray served to him; that he would only eat the commissary items in his bag, that he cried after he was served with contraband citation; and that he suffered a panic attack in the floor after his mat was taken from him.

A short term placement in administrative segregation such as the one alleged by McGrew does not give rise to a protected liberty interest because such a placement does not constitute an atypical and significant hardship on an inmate in relation to the ordinary incident of prison life. *See Sandin*, 515 U.S. at 484; *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) ("Bruggeman's placement in cell isolation and segregated confinement does not rise to the level of an atypical and significant hardship."); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.) *cert. denied* 522 U.S. 848 (1997); *Rollen v. Horton*, Civil No. 3:08–0227, 2009 WL 1346119 at *3 (M.D. Tenn. May 11, 2009) ("The plaintiff fails to state a constitutional claim based upon his allegation that placement in administrative segregation for 23 hours a day constitutes cruel and unusual punishment. Such

harsh confinement is merely a part of the routine discomfort associated with being incarcerated and fails to rise to the level necessary to implicate the Eighth Amendment."). Other district courts have held that holding an inmate on suicide watch or in isolation did not violate the inmate's Eighth Amendment rights. *See Gordon v. Osborne*, No. 4:10CV–P91–M, 2010 WL 4237069, at *6 (W. D. Ky. Oct. 21, 2010) (rejecting prisoner's complaints about placement in an isolation cell where he did not allege the denial of basic human needs); *Brown v. Parnell*, No. 5:09CV-P159-R, 2010 WL 141873, at *5 (W.D. Ky. April 7, 2010) ( prisoner did not allege a cognizable § 1983 claim against them where jail officials feared for prisoner's safety and placed him in isolation); *Harris v. Hulkoff*, No. 2:05-cv-198, 2007 WL 2479467, at *4 (W.D. Mich. August 28, 2007) (rejecting prisoner's claim that his placement on suicide watch violated his constitutional rights). Further, due process does not require that a prisoner be given a hearing before a classification change is ordered, even if such action might result in confinement under less desirable or favorable conditions. *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976); *Montayne v. Haymes*, 427 U.S. 236, 242 (1976).

Finally, McGrew demands $3 million to compensate him for "pain and suffering," but he does not allege that he suffered a physical injury as a result of

10

any of the alleged misconduct.  Thus, it appears that McGrew's alleged pain and suffering stemmed from his emotional distress or anxiety.  Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005).  Although § 1997e(e) does not define "physical injury," the case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than *de minimis*.  *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Adams v. Rockafellow*, 66 F. App'x. 584, 586 (6th Cir. 2003).  McGrew's physical injury is less than *de minimis*; it is non-existent.  Thus, there exists no predicate for his construed emotional distress claim.

For these reasons, McGrew's claims alleging denial of due process and cruel and unusual punishment fail to state a claim upon which relief can be granted.

## 2. Alleged Violation of Right to Privacy

With regard to McGrew's challenge to the search of his personal items by Fannin, McGrew had no protected liberty interest in not having either his living quarters or his personal possessions searched without prior notice. The United States Supreme Court rejected such a notion over twenty years ago, stating:

11

[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions....

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). The Court further opined:

The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S., at 566, 94 S.Ct., at 2979; *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.

*Hudson*, 468 U.S. at 527. *See also Strange v. Kentucky*, No. 1:12CV–P85–R, 2012 WL 3637646, at *4 (W.D. Ky. Aug. 23, 2012) (finding under *Hudson*, "Plaintiff has failed to allege a cognizable Fourth Amendment claim regarding the search of his cell."); *Kitchen-Bey v. Hoskins*, No. 2:06-CV-251, 2006 WL 3500617, at *6 (W.D. Mich. Dec. 4, 2006) ("Because the searches and seizures of Plaintiff's property took place within his prison cell, he has no Fourth Amendment claim.").

12

McGrew's allegation that Defendants Burchett and/or Fannin violated his First and/or Fourth Amendment rights by searching his personal possessions fails to state a claim upon which relief can be granted.

### 4. Alleged Intimidation and Threats

McGrew mentions Officer Contradas only once in the ten-page supplement to his complaint. McGrew alleges that when the Boyd County Sheriff briefly returned him to the BCDC on January 17,, 2013, Officer Contradas walked him to the booking area, and that when McGrew went to the bathroom, Contradas said three times, "Don't kill yourself." [D. E. No. 1-1, p. 8] Even assuming that Contradas made those statements, and further assuming that he intended to taunt or ridicule McGrew in doing so, such verbal statements do not qualify as cruel and unusual punishment under the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir.2004); *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir.1987); *Wingo v. Tennessee Dept. of Corrections*, 499 F. App'x. 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.") To the extent that McGrew alleges that either Burchett or Fannin verbally intimidated, threatened, or verbally harassed him, he can not recover under § 1983.

13

## 5. Claims Against Boyd County

To the extent that McGrew asserts § 1983 claims against Boyd County, he essentially asserts claims against that entity's governing body, presumably the Boyd County Fiscal Court. A municipality ... cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2005) (citing *Monell v. New York City Dep't. of Soc. Servs.* 436 U.S. 658, 694 (1978)). To state a claim for relief against the Boyd County Fiscal Court, McGrew must allege that the alleged action was the result of an unconstitutional policy of, or a custom followed by, the Boyd County Fiscal Court. *Monell*, 436 U.S. at 694; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996); *see also Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be a "moving force" behind constitutional deprivation).

Municipalities and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). A plaintiff must cite specific facts in support of his claim, and conclusory allegations are

14

insufficient. *Culberston v. Doan*, 125 F.Supp.2d 252, 263-64 (S.D. Ohio 2000). A municipality may not be held liable for the actions of employees solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694.

Here, McGrew does not allege that any of the BCDC officials acted pursuant to any policy or custom of the Boyd County Fiscal Court or other governing body of Boyd County. At best, McGrew alleges that Burchett and Fannin acted to protect their own interests. Thus, McGrew's claims against Boyd County and/or its governing body fail to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1.     Plaintiff Thomas Eric McGrew's complaint [D. E. No. 1] is **DISMISSED WITH PREJUDICE**.

2.     The Court shall enter an appropriate judgment.

3.     This matter is **STRICKEN** from the active docket.

This September 17, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge